

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00049-CR

_____

AARON WILLIAM HART, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22924

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Aaron William Hart, a nineteen-year-old male, who, by reason of moderate mental retardation, has a full scale intelligence quotient of between forty-seven and fifty-two and the mental age of approximately an average six year old, was earning money in November 2008 by mowing the lawn of Sabrina Albertson, a neighbor.

Albertson noticed that Hart had ceased mowing and also noticed the absence of T.P., her six-year-old stepson, and went into the yard to locate T.P. Albertson followed the voices of Hart and T.P. to a shed, where she witnessed Hart "sitting directly beside" her stepson "on the ground with legs out in front of him," "trying to hurry and pull his pants up." Hart told Albertson that T.P. had gotten mad at him and pulled his pants down.

Albertson led T.P. into her house and closed the sliding glass door behind her. An uninvited Hart traipsed into the kitchen to ask if T.P.'s father was going to be mad at him and inquired if he was in trouble. Albertson instructed Hart to take his lawnmower and go home. Hart walked outside, paused, came back in, and asked if he could finish mowing the yard. Upon receiving a negative response, he gathered his mower and left.

T.P. told Albertson that Hart "pulled my pants down," "touched his wee-wee," tried to "put it in my butt," and made T.P. touch his "wee-wee" to Hart's "wee-wee." Albertson called the police.

2

To Albertson's surprise, Hart returned and resumed mowing the yard. After he was once again asked to leave, he complied—permanently this time—and walked away. Officer Davis Rowton found Hart walking down the street and placed him under arrest.

On the advice of court-appointed counsel, Hart entered a plea of guilty to the three counts of sexual assault of a child and two counts of indecency with a child contained in the indictment against him. Hart then tried the issue of punishment to a jury, which assessed him with a penalty of thirty years' imprisonment on each of the three sexual assault counts and five years' imprisonment on each of the two indecency with a child counts. Although no such request was made by the State, the trial court sentenced Hart to serve the five penalties consecutively (a cumulative sentence of 100 years' imprisonment).

Hart has appealed. In Hart's brief and in briefs presented by multiple *amici curiae*, a number of issues have been raised.

Hart argues that counsel failed to conduct an adequate investigation into the issue of whether his guilty plea was voluntary. Specifically, Hart claims he received ineffective assistance of counsel when he entered an unintelligent plea of guilt based upon counsel's erroneous advice that community supervision was a viable option in his case. We agree with Hart and reverse and remand.

Hart also alleges counsel was ineffective because he failed to: (1) investigate whether his mental retardation prevented the entry of a knowing and intelligent guilty plea; (2) consider the

3

effect of Hart's diminished capacity as a defense in developing his trial strategy; (3) seek a mental health expert to assist him in determining whether Hart was competent to stand trial; (4) present mitigating evidence of his mental retardation to the jury during punishment; and (5) challenge admissibility of Hart's confession to the police. Hart additionally contends that the trial court erred in overruling his motion for new trial and abused its discretion in issuing allegedly untimely findings of fact and conclusions of law. Finally, Hart complains that a 100-year sentence for a mentally retarded defendant constitutes cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. The issue of ineffective assistance regarding erroneous advice that Hart was eligible for community supervision is dispositive of this case. Therefore, we do not decide Hart's remaining points of error.

## I.  Standard of Review for Ineffective Assistance of Counsel

Hart was entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Battle*, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991) (en banc). "No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2009). "A plea of guilty is not knowingly and voluntarily entered if it is made as a result of ineffective assistance of counsel."[1]  *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim.

---

[1]Hart also complains his counsel's ineffectiveness, in failing to consider or admonish Hart on the availability of the diminished capacity defense, led to an involuntary guilty plea, a ground which we need not consider. Texas does not recognize diminished capacity as an affirmative defense. *Ruffin v. State*, 270 S.W.3d 586, 593 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005); *see Rhoten v. State*, 299 S.W.3d 349 (Tex.

4

App. 1980); *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd). "The constitutional validity of a guilty plea made upon the advice of counsel depends on whether counsel's performance was reasonably competent, rendering a defendant effective representation during the particular proceedings." *Battle*, 817 S.W.2d at 83.

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*. 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The United States Supreme Court and the Texas Court of Criminal Appeals have held that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *see also Imoudu*, 284 S.W.3d at 869; *Battle*, 817 S.W.2d at 84.

The first prong requires a showing that (1) counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Those "strategic choices made after thorough

---

App.—Texarkana 2009, no pet.). Rather, it is a "failure-of-proof defense in which the defendant claims that the State failed to prove that the defendant had the required state of mind at the time of the offense." *Jackson*, 160 S.W.3d at 573–74.

5

investigation of law and facts relevant to plausible options are virtually unchallengeable." *Wiggins v. Smith*, 539 U.S. 510, 521–22 (2003) (quoting *Strickland*, 466 U.S. at 690–91).

The second *Strickland* prejudice prong requires a showing that but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88; *Imoudu*, 284 S.W.3d at 869. A defendant challenging a guilty plea satisfies the prejudice requirement of *Strickland* by showing a reasonable probability that absent counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. "Reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *Strickland'*s second prong carries a lower burden of proof than the preponderance of the evidence standard. *See Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990); *Strickland*, 466 U.S. at 694. An appellant need not show that counsel's deficient performance more likely than not altered the outcome of the case. *Milburn v. State*, 15 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Allegations of ineffectiveness must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

6

## II. Hart's Guilty Plea Was Based on Counsel's Advice that Hart Was Eligible to Receive Community Supervision

When Hart's appointed counsel met with Hart, he believed Hart "may not be competent to answer to the State's Indictment." According to counsel, Hart did "not seem to understand the proceedings or the allegations against him." The trial court granted a motion for psychiatric examination to be conducted by the court's appointed expert Dr. David Bell.

Bell conducted a competency evaluation[2] concluding Hart "has a factual and rational understanding of his charges," was able to disclose facts, events, and states of mind, and could engage in a reasoned choice of legal strategies and options. Bell did not conduct tests on Hart but relied on an interview and review of previous records. The Bell report concluded in regard to Hart's condition that it "diminishes it but does not prohibit" Hart from engaging with counsel in a reasonable and rational manner. During the evaluation, Hart stated "he would like to 'get out of jail' and 'get probation.'" Hart's statement was based upon advice from his counsel.

During the motion for new trial, Hart's counsel testified community supervision was a viable option for Hart. He claimed Hart "told me on several occasions, told [private investigator Jim] Chadwick, without me present, on several occasions, he wanted to plead guilty and go to the Court for punishment to get probation." Although counsel read the Bell report, he did not discuss

---

[2]The test of incompetency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (Vernon 2006). When asked to evaluate the effect of Hart's mental retardation on the capacity to engage with counsel in a reasonable and rational manner, Bell wrote it "diminishes it but does not prohibit it." Without further explanation of this finding, Bell concluded Hart was competent to testify.

it with Bell and did not attempt to ascertain from Bell the degree which Hart's condition diminished his ability to rationally engage with his attorney.   Even though Hart's counsel read the Bell report, at the hearing during which Hart entered his guilty plea, he mischaracterized Hart's level of mental retardation as "mild" instead of the "moderate" level as contained in the report and, after restating Bell's conclusion that Hart was competent to testify, the following plea exchange occurred:

> THE COURT:   All right.   Mr. Hart, in Counts One, Two and Three you are charged with aggravated sexual assault of a child.   As to Count One, how do you wish to plead, guilty or not guilty?
>
> [BY HART]:   Not guilty.
>
> THE COURT:   Sir?
>
> [BY HART]:   Say again.
>
> THE COURT:   Guilty or not guilty?
>
> [BY HART]:   Not --
>
> [HART'S COUNSEL]:   Pleading guilty.   Tell the Judge.
>
> [BY HART]:   Guilty.
>
> THE COURT:   Okay.   And as to Count Two, how do you wish to plead?
>
> [BY HART]:   Guilty.   Guilty.

When asked why he pled guilty, Hart said his counsel "told me to say that. I did not want to say that," and "the attorney told me to tell the judge I'd done it. The attorney told me I'll get probation or go to jail for a long time."[3]

During punishment, counsel advised Hart to take the stand and again plead guilty in front of the jury. He believed "that once [Hart] testified, which he did, and did very well, I believe that -- I thought that the jury would, at least, consider probation." Hart testified:

> I put his -- his privates in his mouth -- and he put his dick -- and he got my dick in his mouth. And did -- I done -- I do [sic] that. And -- and other stuff. And I -- he -- I went -- I went behind the shed to use the bathroom. He followed me behind the shed and he put his pants down and he took -- and stuff. So -- so I -- he said -- get his buckled . . . .
>
> . . . .
>
> He asked me to get his buckle. Do his buckle. And I done that. He pulls his pants down. Started pissing. I tell him to leave but he didn't leave.

The following was also developed:

> Q. Aaron, are you a little nervous?
>
> A. [By Hart] Kind of.
>
> Q. Kind of nervous. You testified earlier that you stuck your private parts in his mouth?
>
> A. Yes.

---

[3]Dr. Vincent Ramos evaluated Hart for competency to stand trial. He stated in his report attached to the motion for new trial that Hart's motivation for pleading guilty "could have been his belief it would result in an immediate reward, such as going home and probation." In an audio recorded confession to the police, Hart shared details of the incident with T.P., and then asked officers if he could go home and collect the money owed to him for mowing the yard.

9

Q.  Why did you do that?

A.  Because I had -- I was -- got -- I was thinking about the voice in my head.  And I was dizzy at that time . . . .

. . . .

Q.  Do you know that it was wrong to do what you did with [T.P.]?

A.  Yes, I know it was wrong.  And I think that too.  I don't mean to . . . .

. . . .

A.  And -- and I know it was wrong but -- I know I do it, but I didn't mean to do it in the first place -- inside my head -- and some -- something come -- something popped in my head and telling me to do that, do that.  But I -- I kind of stopped it, but I didn't stop that time.

The State elicited:

Q.  You do know the difference between right and wrong, don't you?

A.  No, I don't.

. . . .

Q.  If you have sex with a little boy, that's wrong?

A.  Yes.

. . . .

Q.  And when you were doing this to [T.P.] you were enjoying it, weren't you?

A.  No.

10

Q.     It didn't feel good?

A.     No.

. . . .

Q.     Well, why did you ask him to do it if it didn't feel good? . . . . [4]

A.     I was -- I had something in my head and stuff --

Q.     Okay.

A.     -- and I was dizzy.

Hart's father and sister took the witness stand during punishment and expressed their belief that Hart should be placed on community supervision. Other than Hart, these were the sole witnesses called by the defense. Hart's sister described him as "slow," said he was in special classes, and told the jury that Hart could accomplish simple tasks. Hart's father also said Hart was in special education classes and was described as "MR." Even though Hart's defense was relying on the hope of leniency based on his mental retardation, no evidence was submitted to the jury that used the term "mentally retarded" or any variation of that phrase. Given the speech impediment with which Hart is afflicted, it is impossible to determine how much the fact that Hart's testimony was disjointed was attributed by the jury to his retarded condition and how much of it the jurors might have determined was due to the speech impediment. Despite this, without any further evidence or testimony introduced to the jury, Hart's counsel argued during closing

---

[4]Hart later contradicted his testimony by stating the actions with T.P. "felt good."

argument that Hart was "obviously mentally retarded" and asked the jury to award him community supervision.[5]

## III. Because Hart Was Not Eligible for Community Supervision, Counsel's Advice to Plead Guilty on that Basis Constituted Ineffective Assistance

"Due process requires that each defendant who pleads guilty does so with a 'full understanding of the charges against him and the consequences of his plea.'" *Burke v. State*, 80 S.W.3d 82, 93 (Tex. App.—Fort Worth 2002, no pet.) (citing *Basham v. State*, 608 S.W.2d 677, 678 (Tex. Crim. App. [Panel Op.] 1980)). Thus, even assuming "that the prosecutor had overwhelming evidence of guilt," without adequate proof that a defendant "in fact understood the charge, the plea cannot be voluntary." *Henderson v. Morgan*, 426 U.S. 637, 644–45 (1976). A guilty plea will not support a conviction where motivated by significant misinformation conveyed by defense counsel because it cannot be considered voluntarily and knowingly made. *Burke*, 80 S.W.3d at 93 (citing *Battle*, 817 S.W.2d at 83; *Ex parte Kelly*, 676 S.W.2d 132, 134–35 (Tex.

---

[5]During the hearing on Hart's motion for new trial, Hart's teacher for four years and his high school principal testified about the degree of his mental retardation. They both explained that Hart had difficulty understanding abstract terminology and the severity of the wrong committed with T.P. Ramos testified Hart did not understand the terms "guilty" or "appeal" during his evaluation. Hart had a constitutionally protected right to provide the jury with mitigating evidence that his trial counsel either failed to discover or failed to offer. *Williams v. Taylor*, 529 U.S. at 393; *see Freeman v. State*, 167 S.W.3d 114, 117–18 (Tex. App.—Waco 2005, no pet.) (finding mother's lay testimony regarding defendant's mental health, coupled with counsel's failure to investigate, led to lack of mitigation evidence in form of Freeman's mental health history which "clearly would have been admissible"). He argues that counsel was ineffective for failing to introduce evidence of his mental retardation in front of the jury during punishment. Even though "it is sheer speculation that evidence of his" mental retardation "would have in fact favorably influenced the jury's assessment of punishment," Hart's jury could have "possibly been influenced by it." *Freeman*, 167 S.W.3d at 121.

Crim. App. 1984); *Cardenas v. State*, 960 S.W.2d 941, 943 (Tex. App.—Texarkana 1998, pet. ref'd)).

In addition to the previous statements concerning Hart's degree of mental acuity, it is worthwhile to review some of the other evidence presented regarding this, both during trial and in the motion for new trial. Hart has an extremely low range of functioning, including difficulty remembering the year he was born. Out of four diagnostic tests, three of Hart's scores place him at a mental functioning of less than six years of age. The remaining test assesses his mental age at 6.2 years. Additionally, he has a moderate to severe speech impairment. According to Hart's father,

> [he] can't count money, does not know his right shoe from his left shoe, can't run bath water for himself, can't shave, can't cook, has poor verbal communication, can't read or write, can't clean a room, likes toys designed for 5 to 6 year old children, and loves cartoons.
>
> . . . .
>
> He began carrying a string in his pocket at age 8, and he talked to the string every day and night, and he to the present talks to a piece of string. He could never explain what a television show was about. He would mix up the days of the week.

However, the degree of mental retardation from which Hart suffers is less determinative here than the cogent fact that he was provided patently incorrect information upon which he relied in entering a guilty plea. Even a person of genius status requires somewhat correct data in order to make an informed decision.

13

"A defendant is not eligible for community supervision" recommended by a jury "if the defendant . . . is convicted of an offense listed in Section 3g(a)(1)(C), (E), or (H), if the victim of the offense was younger than 14 years of age at the time the offense was committed." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(5) (Vernon Supp. 2009).[6] These sections prohibit imposition of community supervision for convictions of indecency with a child and sexual assault. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(C), (H) (Vernon Supp. 2009). Hart pled and was found guilty of sexual assault and indecency with a child. Therefore, he was never eligible for community supervision upon conviction of these charges.

Here, the record is clear that Hart pled guilty while fully believing his counsel's advice that he was eligible to receive community supervision. In *Battle*, the Texas Court of Criminal Appeals found the defendant's guilty plea involuntary where it was based on counsel's advice that the defendant was eligible for community supervision when, in fact, he was not. 817 S.W.2d at 83; *see Cardenas*, 960 S.W.2d at 946–47 (finding counsel ineffective based on erroneous advice that defendant could receive community supervision). Further, the court concluded that counsel's performance was deficient and that his deficient performance prejudiced the defense. *Battle*, 817 S.W.2d at 84; *see Ex parte Briggs*, 187 S.W.3d 458, 469 n.34 (Tex. Crim. App. 2005). As in *Battle* and *Cardenas*, we conclude that counsel's failure to consult the Texas Code of Criminal Procedure while advising Hart to plead guilty without the benefit of a plea bargain based on an

---

[6]*See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.06, 4.01(a), 2007 Tex. Gen. Laws 1120, 1123, 1148 (making change in law effective for offenses committed on or after September 1, 2007).

14

erroneous belief that he was entitled to community supervision fell below an objective standard of reasonableness. Further, we conclude that Hart's statements that his counsel "told me to [plead guilty]. I did not want to say that," and "[t]he attorney told me I'll get probation or go to jail for a long time" satisfies the prejudice requirement of *Strickland* because it demonstrates, with a probability sufficient to undermine confidence in the outcome that absent counsel's deficient performance, Hart would not have pled guilty. *See Helton v. State*, 909 S.W.2d 298, 299 (Tex. App.—Beaumont 1995, pet. ref'd); *Matthews v. State*, 830 S.W.2d 342, 345 (Tex. App.—Houston [14th Dist.] 1992, no pet.).

## IV.   CONCLUSION

We reverse the judgment and remand to the trial court for proceedings consistent with this opinion.

Bailey C. Moseley
Justice

Date Submitted:      April 14, 2010
Date Decided:       April 30, 2010

Publish

15