In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00130-CR

                                                ______________________________

 

 

                                    BILLY DEE RILEY,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                   

 

 

                                      On Appeal from the 102nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 09F0483-102

 

                                                                
                                  

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss

                             Dissenting Opinion
by Justice Carter








                                                                   O P I N I O N

 

            Billy Dee
Riley, Jr., had been convicted of murder in a Bowie County jury trial.  The punishment phase evidence had been fully
received, during which the primary defense strategy had been to seek community
supervision for Riley.  In fact, Riley’s
attorneys had advised him before and during trial that he was qualified to ask
for community supervision.  But, during
the charge conference on punishment, his defense team was surprised to discover
that Riley was not eligible for community supervision because he had opted to
try the case to the jury.  The jury
assessed punishment of fifty years’ imprisonment.  

            After
seeking and being denied a new trial, Riley appeals the trial court’s judgment
sentencing him in accordance with the jury’s verdict.  Riley complains of ineffective assistance of
counsel and other grounds.[1]  Because we agree with Riley that his counsel’s
advice regarding availability of community supervision by a jury constituted
ineffective assistance of counsel, we reverse and remand for a new trial based
on this dispositive issue alone.

            Any
allegation of ineffectiveness of counsel must be firmly founded in the record.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Wallace v.
State, 75 S.W.3d 576,
589 (Tex. App.—Texarkana 2002), aff’d, 106 S.W.3d 103 (Tex. Crim. App. 2003).  Riley bears the burden of proving by a
preponderance of the evidence that his counsel was ineffective.  Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d at 813; Cannon
v. State, 668 S.W.2d
401, 403 (Tex. Crim. App. 1984).

            We
apply the two-pronged Strickland test handed down by the
United States Supreme Court to the claim of ineffective assistance of counsel.  Hill v.
Lockhart, 474 U.S. 52, 57 (1985); see
Strickland v. Washington, 466 U.S. 668 (1984).  Failure to satisfy either prong of the Strickland test
is fatal.  Ex parte Martinez, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

            Because Riley’s
challenge was made to the trial court in a motion for new trial, we analyze the
ineffective assistance claim as a challenge to the denial of his motion for new
trial.  Charles v. State, 146 S.W.3d 204, 208–10 (Tex. Crim. App. 2004), superseded by rule on other grounds by State
v. Herndon, 215 S.W.3d 901 (Tex. Crim.
App. 2007); Shanklin v. State, 190
S.W.3d 154, 158 (Tex. App.—Houston [1st Dist.] 2005), pet. dism’d, 211 S.W.3d 315 (Tex. Crim. App. 2007) (reversing for
new trial on punishment due to counsel’s failure to investigate and present
mitigating evidence); State v. Kelley,
20 S.W.3d 147, 151 (Tex. App.—Texarkana 2000, no pet.) (grant of motion for new
trial based on ineffective assistance was proper).  Therefore, we review the Strickland test through an abuse of discretion standard, and
reverse only if the trial court’s decision is arbitrary or unreasonable,
viewing the evidence in the light most favorable to the ruling.  Shanklin,
190 S.W.3d at 158–59.  A trial court
abuses its discretion in denying a motion for new trial only when no reasonable
view of the record could support the trial court’s ruling.  Charles,
146 S.W.3d at 208.

            First,
Riley must show that counsel’s performance fell below an objective standard of
reasonableness in light of prevailing professional norms.  Strickland, 466 U.S. at 687–88. 
There is a strong presumption that counsel’s conduct fell within the wide range
of reasonable professional assistance and that the challenged action could be
considered sound trial strategy.  Id. at 689; Ex
parte White, 160
S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim.
App. 2000).  Therefore, we will not
second-guess the strategy of Riley’s counsel at trial through hindsight.  Blott
v. State, 588 S.W.2d
588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex.
App.—Texarkana 2005, pet. ref’d).

            Riley’s motion for new
trial asserted ineffective assistance of counsel and was supported by live
testimony and by two affidavits considered by the trial court.  The affidavit of Riley’s lead counsel, Kyle
Davis, stated:

In addition to
me, Defendant’s defense team was comprised of attorneys Craig Barrett and Joe
Tyler.  Prior to trial, and during the
course of the trial, each of us advised Defendant that he would be eligible for
probation in the event he was convicted of murder.  During voir dire examination of the jury
panel, both the defense and the prosecuting attorney questioned the prospective
jury panel on their opinions of the applicability of probation for a person
convicted of murder.  During the
punishment phase of the trial, the defense called a probation officer to
testify concerning the terms and conditions Defendant would have to satisfy if
the jury recommended probation in the case. 
The probation officer never mentioned that Defendant’s murder conviction
would make him ineligible for probation. Moreover, neither the prosecuting
attorney nor the trial judge ever alluded to Defendant’s ineligibility for
probation during the direct examination and the cross-examination of the
probation officer.  . . . The first time
it was ever mentioned that Defendant’s murder conviction would make him
ineligible for probation was during the punishment phase charge conference.

 

 

Riley’s affidavit stated:

 

Other than the
underlying felony conviction of murder in the above-entitled and numbered
cause, I have never before been convicted of a felony in any federal or state
court in this or any other state.  . . . Prior
to trial, and during the course of the trial, each of my attorneys advised me
that I would be eligible for probation in the event I was convicted of murder.  . . . Had my trial attorneys not given me
erroneous advice concerning my eligibility for probation in the event I was
convicted of murder, I would have entered an open plea of nolo contendere to
the trial court in hopes that the trial court would grant deferred adjudication
probation pursuant to Section 5 of Article 42.12 of the Texas Code of Criminal
Procedure.

 

            At the hearing on the
motion for new trial, Tyler testified that he advised Riley that he would be
eligible for community supervision if convicted of murder, that he first became
aware of the mistake “after the punishment evidence had been put on but before
closing arguments in the punishment phase,” and that “the whole punishment
phase of the trial, the defense evidence put on was basically arguing for
probation.”  Even the prosecutor
testified he was not aware that Riley could not receive community supervision
from the jury. 

            After considering the
affidavits of Riley and his counsel and the hearing testimony, the trial court
overruled the motion for new trial. 
Based on this record, we consider Riley’s claim of ineffective
assistance.

            It is undisputed that
counsel’s belief that Riley could receive community supervision in the event of
a murder conviction was erroneous. 
Sections 3g and 4(d)(8) of Article 42.12 prevent a judge or jury from
ordering or recommending community supervision following a conviction of
murder.  Tex. Code Crim. Proc. Ann. art. 42.12, §§ 3g, 4(d)(8) (West
Supp. 2010).  On the other hand, Section
5 of Article 42.12 allows a judge to enter deferred adjudication community
supervision after receiving a plea of guilty or nolo contendere to a charge of
murder.  Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (West Supp.
2010); see Cabezas v. State, 848
S.W.2d 693, 695 (Tex. Crim. App. 1993). 
Counsel’s misunderstanding on this critical point is documented in the “application
for community supervision from the jury” and the fact that each of five
punishment witnesses testified on subjects relating to community
supervision.  

            Counsel has a duty to
exert best efforts to ensure that the client’s decisions are based on correct
information as to the applicable law.  Ex parte Wilson, 724 S.W.2d 72, 74 (Tex. Crim.
App. 1987).  “An attorney’s failure to
give competent advice to a defendant which would promote an understanding of
the law in relation to the facts and which would permit an informed and
conscious choice is error.”  Gallegos v. State, 756 S.W.2d 45, 48 (Tex.
App.—San Antonio 1988, pet. ref’d) (after denial of motion for new trial,
sister court found counsel ineffective for failing to inform defendant, charged
with Article 42.12, Section 3g offense, that his waiver of assessment of
punishment by jury would foreclose possible community supervision) (citing Ex
parte Morse, 591
S.W.2d 904, 905 (Tex. Crim. App. 1980)).

            “In assessing
competence, we [hold] counsel accountable for knowledge, or the ability to
attain knowledge, of relevant legal matters which are neither novel nor
unsettled.”  Ex parte Moody, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).  Whether Riley was eligible for community
supervision from the jury was a settled matter of law that was readily
ascertainable.  During the hearing on the
motion for new trial, although the State asked whether Riley went to trial
based on the trial strategy of using self-defense, counsel did not testify that
his failure to inform Riley he was ineligible for deferred adjudication was due
to any trial strategy.[2]  Because there is no evidence suggesting that
counsel’s failure to inform Riley on this settled matter of law could be
considered reasonable trial strategy, the only ruling which could have been
made in light of the evidence presented was that counsel’s performance fell
below an objective standard of reasonableness in light of prevailing professional
norms.  We conclude that the first Strickland prong has been met.

            The
second Strickland prong, prejudice, requires a showing that, but
for counsel’s unprofessional error, there is a reasonable probability that the
result of the proceeding would have been different.  Strickland, 466 U.S. at 687–88.  Reasonable probability means a “probability
sufficient to undermine confidence in the outcome.”  Id.
at 694.  Strickland’s second prong carries a lower burden of proof than the
preponderance of the evidence.  See Bouchillon
v. Collins, 907 F.2d 589, 595 (5th Cir. 1990); Strickland, 466 U.S. at 694.  An appellant need not show that counsel’s
deficient performance more likely than not altered the outcome of the case.  Milburn
v. State, 15 S.W.3d 267, 269 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).


            In State v. Recer, 815 S.W.2d 730 (Tex.
Crim. App. 1991), the Texas Court of Criminal Appeals held that 

[t]o
support a claim for ineffective assistance of counsel where, as in this case,
the complaint is that counsel misunderstood the law regarding [community
supervision] . . . . [t]here must be evidence that the defendant was initially
eligible to receive [community supervision], that counsel’s advice to go to the
[jury][3]
for sentencing was given as a part of a valid trial strategy, that  the defendant’s decision to have the [jury]
assess punishment was based on his attorney’s erroneous advice, and that the
defendant’s decision would have been different if [his] attorney had correctly
informed [him] of the law.

 

Id. at 731–32.

 

            We
have already established that counsel misunderstood the law regarding deferred
adjudication community supervision and that his advice to Riley could not have
been based on a valid trial strategy, given the evidence before the trial
court.  Also, in this case, it is
undisputed that Riley was initially eligible to be considered for deferred
adjudication community supervision from the trial court.[4]  Riley’s affidavit, and the affidavit of his
counsel read into the record at the hearing—both of which the trial court
considered as evidence—stated that, absent counsel’s erroneous advice, Riley
would have pled nolo contendere and would have asked the trial court for
deferred adjudication community supervision. 
The evidence of Riley’s plea had he received the proper advice was not
disputed by the State.  

            Therefore,
the evidence has conclusively shown that: 
(1) Riley could have been eligible to be considered for community
supervision; (2) counsel’s advice to use the jury for sentencing was not part
of a valid trial strategy; (3) Riley’s decision to use the jury for punishment
was based on counsel’s erroneous advice; and (4) Riley’s decision would have
been different if counsel had correctly informed him of the law regarding
community supervision.  Recer, 815 S.W.2d at 731; Garcia v. State, 308 S.W.3d 62 (Tex.
App.—San Antonio 2009, no pet.); Isham,
258 S.W.3d at 252.

            Riley also
argues that, under Hill, his plea was
involuntary.  “[T]he voluntariness of the
plea depends on (1) whether counsel’s advice was within the range of competence
demanded of attorneys in criminal cases and if not, (2) whether there is a
reasonable probability that, but for counsel’s errors, he would not have
pleaded guilty and would have insisted on going to trial.”  Moody,
991 S.W.2d at 857–58 (citing generally Hill,
474 U.S. 52; Strickland, 466 U.S. 668;
McMann v. Richardson, 397 U.S. 759 (1970);
Ex parte Morrow, 952 S.W.2d 530, 536
(Tex. Crim. App. 1997)).  These cases
present opposite factual scenarios in which the defendant has pled guilty.  They are predicated on the theory that the
defendant has given up a valuable right—the right to a jury trial.

            Here, Riley
cannot argue that he gave up the valuable right to a jury trial; however,
counsel’s action did foreclose the possibility of deferred adjudication
community supervision.  “The right to
[community supervision] is valuable.”  Thompson v. State, 604 S.W.2d 180, 182
(Tex. Crim. App. [Panel Op.] 1982) (citing
Trevino v. State, 577 S.W.2d 242, 243
(Tex. Crim. App. 1979)).  Again, while
the following cases present a reverse scenario in which the defendants pled
guilty based on erroneous advice from counsel that they could receive community
supervision from the trial court, we have found the Strickland second prong met where counsel’s advice foreclosed any
opportunity for community supervision.  See Hart v. State, 314 S.W.3d 37, 44–45
(Tex. App.—Texarkana 2010, no pet.) (citing Ex
parte Battle, 817 S.W.2d 81, 83 (Tex. Crim. App. 1991)); Cardenas v. State, 960 S.W.2d 941,
946–47 (Tex. App.—Texarkana 1998, pet. ref’d); see also Garcia, 308 S.W.3d at 73.

            Here, the
defense team’s misunderstanding of the law foreclosed Riley’s possibility of
receiving deferred adjudication.  Because
the statute allowed a trial court to impose deferred adjudication community
supervision for murder—a possibility deemed reasonable by the Legislature—and
counsel’s advice foreclosed this option, which the trial court otherwise would
have been required to consider, we find, and the uncontested evidence at the
motion for new trial demonstrated, there was a reasonable probability that the
result of the proceeding would have been different absent the erroneous
advice.  A finding to the contrary would
require us to speculate, without support in the record, regarding whether the
trial court would have awarded deferred adjudication community supervision if
given the option.[5]  That speculation would necessarily have us
considering “evidence about the actual process of decision . . . not part of
the record of the proceeding under review, and evidence about, for example, a
particular judge’s sentencing practices”—an exercise forbidden to us.  See
Strickland, 466 U.S. at 695.  

            Because
Riley[6]
has met both prongs of the Strickland test,
we sustain his first issue on appeal.[7]  Accordingly, the trial court’s judgment is
reversed, and this case is remanded to the trial court for a new trial.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

 

 

DISSENTING OPINION

 

            When Billy Dee Riley, Jr., was asked
if he killed Terry Matthews, he answered, “Evidence says that.”   “Q.  Did the bullet that killed Terry
Matthews come from your gun?  A.  That’s what the evidence proved.  Q.  So
you have no dispute with that?  A.  It’s science.” 


            These events
took place at a local night club where a fight began.  The security guard attempted to control the
altercation by spraying mace or pepper spray, but it apparently had the
opposite effect.  People ran out of the
club, but Riley went to the console of his truck, obtained his gun, put it in
his pocket, and went back inside the club building.  Riley became engaged in a fight and testified,
“I pulled the gun out of my back pocket. 
The gun . . . went off two times because the safety got jammed.”  Riley heard shots and began shooting over his
shoulder.  “And I could see flashes of
the guns, and I was shooting and I shot until my gun was clear.”  The deceased, Matthews, was unarmed.  Another witness testified, “Mr. Riley was out
of his car and just shooting, randomly shooting.”  The forensic pathologist testified that the
distance between the gun and the body was one to four feet.   

            These are
the facts that Riley now says he would have liked to have presented to the
trial judge and pled guilty and then ask the judge to defer his murder conviction
and place him on community supervision. 
Upon successfully completing the terms of community supervision, Riley
would then have no record of a conviction for this offense.  

            No
doubt the attorneys were deficient in advising Riley that he could ask the jury
for community supervision.[8]  The real question before us is whether there
is a reasonable probability that but for that deficient advice, the result
would have been different.  This issue
has never been presented to an appellate court so far as counsel and this Court
can determine after intense research.  
The majority opinion quotes State
v. Recer for the requisite proof in this situation.   815 S.W.2d 730, 731–32 (Tex. Crim App. 1991).
 In Recer,
the Texas Court of Criminal Appeals found no deficient conduct by the attorney
when he advised a defendant that the trial court could assess probation
(community supervision) even though a jury had found the defendant used a
deadly weapon which precluded such consideration.  The facts of that case did not prove the
attorney’s advice was not based on a valid strategy.  So the Texas Court of Criminal Appeals held
that the attorney’s conduct fell within proper professional standards;
consequently, the dicta cited in the majority opinion is not controlling.[9]  

            We must
decide, without controlling precedent, whether these facts lead to the
conclusion that it is reasonably probable that if counsel had advised Riley he
could plead guilty and ask the judge to defer his guilt and place him on
community supervision, a different result would have occurred.  I do not think so.

            I
agree we cannot try to analyze the particular sentencing practices of a judge,
but we have the entire record before us and we are to consider what is
reasonably probable.  This case was hotly
contested with Riley urging self-defense, reduction of the charge by a finding
of sudden passion, and lesser included offenses.   In order for Riley to attempt to obtain a
deferred adjudication, he would have to plead guilty and waive all the possible
defenses, as well as relieve the State of its burden to prove this murder
beyond a reasonable doubt.  Had that
course of action been taken, Riley would go before the trial judge, after
admitting he committed murder, to ask for deferral of the sentence.  The trial judge had an opportunity to
consider the merits of this allegation at the motion for new trial hearing, but
denied the motion.  We are to review that
decision on an abuse of discretion standard. 


            It is Riley’s
burden to prove that it is reasonably probable there would have been a
different result had counsel provided accurate advice.  The majority opinion details the deficient
conduct, but does not explain how Riley proved that, but for such deficient
conduct, a different result was reasonably probable.  Instead, the opinion, in a conclusory
fashion, states that Riley has met both prongs of the Strickland[10]
test.  I do not believe the trial court
abused its discretion in denying the motion for new trial.  

            I respectfully dissent.    

            

            

                                                                                    Jack
Carter                              

                                                                                    Justice

 

Date
Submitted:          June 15, 2011

Date
Decided:             July 29, 2011

 

Publish

 

 











[1]In
addition to the dispositive ground addressed in this appeal, Riley argued that:  (1) the trial court had a duty to admonish
him regarding ineligibility of community supervision from a jury; (2) the court
failed to include language in the punishment charge requiring rejection of the
issue of sudden passion to be unanimous; (3) the punishment charge allowed
rendition of a nonunanimous verdict; (4) counsel rendered ineffective
assistance in failing to object to the punishment charge; (5) evidence was
insufficient to establish the jury’s rejection of sudden passion during
punishment; and (6) the trial court erred by excluding “certain photographs and
testimony.”  





[2]The
State argues that the defense team’s strategy was to argue and present evidence
of self-defense.  This reasoning might
have been persuasive if a record in this was not developed demonstrating
counsel’s reasoning.  In this case, it is
undisputed, however, that this strategy was developed through counsel’s
misunderstanding of the law.  Riley’s
affidavit stated that, had he known he would not be eligible to receive
community supervision from the jury, he would have asked the trial court for
deferred adjudication community supervision. 
The decision on how to plead is ultimately the sole province of the
defendant.  The State also argues,  “When asked whether or not entering an open
plea to the trial court for murder based on this set of facts would have been a
viable trial strategy from him,” Riley’s trial counsel replied, “[t]he
likelihood of that would be small.” 
However, the question is not what counsel’s advice would be when faced
with Riley’s uncontested affidavit that his plea would have been different, but
rather, whether counsel’s failure to advise Riley that he was ineligible for
community supervision if found guilty by a jury was due to any reasonable trial
strategy.  Next, the State points to the
inclusion of lesser included offenses for the proposition that counsel’s
failure to inform his client that he would not be eligible for community
supervision by a jury was due to some trial strategy.  This theory was not presented to the trial
court during the hearing on the motion for new trial; thus, counsel did not
testify that the inclusion of lesser included offenses was a part of a trial
strategy justifying failure to inform Riley that he would be ineligible for
community supervision by a jury.  See generally Ramirez v. State, 301
S.W.3d 410 (Tex. App.—Austin 2009, no pet.) (rejecting State’s argument that
counsel’s mistake to have trial court assess punishment following conviction of
Article 42.12, Section 3g offense was based on trial strategy where record
revealed otherwise).





[3]Although
Recer was decided in a different
posture, in which counsel’s advice led to punishment assessment by the trial
court, we find the test in Recer instructive.


 





[4]The
State concedes Riley’s initial eligibility. 
“We believe the Court of Criminal Appeals included the word initially to require that the defendant’s
eligibility be determined as of the filing of the punishment election rather
than at the time of the punishment hearing.”  Isham v.
State, 258 S.W.3d 244, 253 (Tex. App.—Eastland 2008, pet. ref’d) (referring
to Recer, 815 S.W.2d 730).  Riley’s punishment election was made several
months before trial.  





[5]The
State cites the following statement made by the trial court as support for the
proposition that the result of the proceeding would not have been different
absent counsel’s error:  

It
just—from the motion itself, the issue is one—it’s just a legal motion, not
hypothetically what the Court would have done or would not have done.  The record speaks for itself in that this
case went to the jury and the jury has addressed the issue.  I feel that I probably—really, I probably can
not [sic] state what my opinion is in it, other than the jury verdict speaks
for itself, and this Court accepted the jury verdict in this matter and ruled
and assessed the punishment as stated by this jury.

 

We do not consider this a statement by the
trial court that it would necessarily have denied deferred adjudication
community supervision had Riley entered an open plea of nolo contendere.

 





[6]We
limit our holding to the unique facts of this case.

 





[7]A
few days before its brief was due (and well after the clerk’s record was
received by this Court), the State attempted to supplement the record with a
new affidavit created by the prosecuting attorney averring, among other things,
that he “would not have approved the waiver of the right of trial by
jury.”  The Texas Rules of Appellate
Procedure provide that the record may be supplemented only “[i]f a relevant
item has been omitted from the clerk’s record.” 
Tex. R. App. P.
34.5(c)(1); Amador v. State, 221
S.W.3d 666, 676–77 (Tex. Crim. App. 2007). 
It is clear that the State’s newly created affidavit was not before the
trial court when it ruled on the motion for new trial.  We struck the State’s affidavit as an
improper attempt to avoid Rule 34’s purpose to “ensure[] that the record on
appeal accurately reflects all of the evidence that was seen by, used by, or
considered by the trial judge at the time he made a ruling.”  Amador,
221 S.W.3d at 677.  The State’s affidavit
will not be considered by this Court.





[8]Experience
is a great teacher, but this case points out why lawyers cannot rely on that
alone.  Prior law allowed a request for
probation (community supervision) even in murder cases, and it seems in this
case everyone was operating under that perception.  The law changed in 2007.  Act of April 25, 2007, 80th Leg., R.S., ch.
1205, § 3(5), 2007 Tex. Gen. Laws 4078, 4079.   


 





[9]In
Recer the defendant waived his right
to have the jury assess punishment whereas here the defendant insisted on that
right.  





[10]
Strickland v. Washington, 466
U.S. 668 (1984).