

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00106-CR

DAVID GENTRY WALLER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01897

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Michael Runnels' lawnmower disappeared from his family's rent house, and Runnels discovered it in the possession of David Gentry Waller, who claimed to have purchased the mower from a third party. In response to Runnels' demand, Waller brought the mower to Runnels, but a fight ensued.[1] As a result, Runnels was shot, Waller was convicted of aggravated

---

[1]Runnels' family had purchased a rental house down the street from theirs in Clarksville, Texas, and they were remodeling it. A new yellow and black push mower had disappeared from the rental house a week or so after Runnels bought it. Runnels testified that, several days after the mower disappeared, Waller came to him and told him he had the mower and would return it to Runnels' house.

Three or four days later, on August 6, 2012, when the mower had not been returned, Runnels drove to Waller's mother's house, where Waller was at the time, and demanded the mower be returned. According to Runnels, Waller was cursing at him and telling him not to come to his "mom's house with this BS," so Runnels drove back home. Waller's friend, Nehemiah Thomas, and Waller's brother, Kenneth Waller, were at Waller's mother's home that night, and they testified that Runnels got in Waller's face and physically threatened Waller if he did not get his lawnmower back. They also testified that, after Runnels left, he sent Waller threatening text messages.

Around 10:30 p.m., less than one hour after Runnels arrived home, Waller arrived in a brown Chevrolet pickup truck. Thomas was a passenger in the truck, and there was a "yellowish," push mower in the bed of the truck. Including Thomas, there were four eyewitnesses to the events that followed. Manuel Early, who had been visiting Runnels, was outside Runnels' house when Waller drove up. Runnels' cousins, Xavier Jackson, and his brother, Ranzavian Ricks, were outside their grandmother's house, across the street from Runnels' house, when Waller arrived.

Jackson and Early testified that the two men exchanged heated words, and Runnels expected Waller to return the mower, but Waller claimed to have purchased the mower from a third party. Waller wanted Runnels to reimburse him the funds spent buying the mower. Ricks denied that Waller demanded any money. When Runnels refused to pay Waller, the two men started wrestling. Jackson testified that the two men were pushing and choking each other, and Runnels told Waller that he had thirty seconds to get his mower out of the truck or he (Runnels) was going to knock Waller out.

In contrast, Thomas testified that Waller went to Runnels' home to return the mower and did not expect any money, but "as soon as [they] pulled up, Runnels grabbed Waller "and put him in a headlock," and the two men "tussled." When they briefly separated, Waller told Runnels that, since he made such a big deal of this, "he wanted his money instead of just giving him the lawnmower for free." Thomas saw the two men play "tug-of-war with the lawnmower because . . . [Waller] said he wasn't going to give it back unless [Runnels] go ahead and give him the money."

Jackson, Ricks, and Early testified that, after the two men separated, Waller went back to the cab of his truck and "reached in the truck and got a gun." Runnels had pulled the mower out of the truck, set it on the ground, and was bending over because he was out of breath. Jackson, Ricks, and Early all saw Waller shoot Runnels, get back into his truck and drive away. While Jackson and Early testified that Waller was at the back of the truck when he shot Runnels, Ricks testified that Waller was near the front. Thomas testified that, while he and Waller were at Runnels' house, he never saw a gun or holster in Waller's truck, did not see Waller get a gun out of the truck, but while the two men were tussling over the mower, he heard a gunshot before Waller got back in the truck and drove away.

2

assault with a deadly weapon, and the trial court ordered a fifty-year term of imprisonment and a $10,000.00 fine.

On appeal, Waller argues that the trial court erred in admitting testimony regarding Waller's reputation for not being peaceful and law-abiding, that the trial court erred in failing to instruct the jury that extraneous offenses must be proven beyond a reasonable doubt, and that he received ineffective assistance of counsel. We affirm the trial court's judgment because (1) no error regarding reputation evidence was preserved for our review, (2) failure to instruct the jury on extraneous offenses was not egregiously harmful, and (3) ineffective assistance of counsel was not shown.

*(1)     No Error Regarding Reputation Evidence Was Preserved for Our Review*

Waller contends that the trial court erred in "admitting evidence of Waller's poor reputation in the community for being peaceful and law-abiding." Throughout the State's case at trial, Waller established a pattern of asking the State's witnesses on cross-examination if they were aware that Runnels was not supposed to possess a firearm due to prior domestic violence charges. During the State's cross examination of the defense's first witness, Nehemiah Thomas, a conference occurred at the bench:

> [State's Attorney]: Your Honor, she's asking questions about the victim. I don't want to get into have-you-heard-about-certain-things-that-the-defendant-has-done, as far as criminally and what kind of a person he is, if they're going to --  they brought up the issue of violence and so forth. He's the more violent person and if he's --
>
> [Defense Attorney]: Your Honor --

<hr>

While no gun was ever found, the police did find an empty holster for a handgun on the front seat of Waller's truck.

[State's Attorney]: -- heard about the reputation of one, it seems fair that --

THE COURT: You can ask about the reputation.

[Defense Attorney]: Well, Your Honor, as far as that goes, I'm allowed to ask about the reputation of the alleged victim for aggressiveness. That doesn't mean that then you can't get into my client --

THE COURT: You've emphasized who can have a gun and who hasn't had a gun; I think you've opened it up for --

[Defense Attorney]: Your Honor, I've specifically not requesting any information as to whether or not my client is --

THE COURT: I know but you have pointed the finger at everybody else that couldn't have a gun. [Your] guy can't have a gun. I'm going to let him go into it.

[Defense Attorney]: Your Honor, I'd like to object to that.

THE COURT: I know, and I overrule you.

On continuing cross-examination by the State, Thomas admitted that he could not own or possess a gun because he had been convicted of family-violence offenses. The State further cross-examined Thomas regarding the details of those family-violence convictions. When the State began asking Thomas about Waller, the following exchange took place:

[State's Attorney]: Now, there's been a lot made about people who could have guns, including yourself, and the victim in this who got shot through the pelvis and spent 9 days in intensive care, the defendant in this case, he can't have a gun either, can he?

[Defense Attorney]: Objection, Your Honor, same objection.

THE COURT: Overruled.

Q.     [State's Attorney] I'm asking you a question; the defendant in this case can't have a gun either, can he:

4

A.      No, sir.

Q.      His reputation in the community for being a peaceful, law-abiding citizen is not very good either, is it?

A.      No, sir. I guess he's been to jail before, exactly the same as I have. Except I've never been charged with a gun in my life.

Q.      Okay.

To properly preserve error with regard to admission of evidence, there must have been a timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint, and there must be a ruling. TEX. R. APP. P. 33.1. While Waller objected to the State's question regarding whether Waller could have a gun, he failed to object to the State's question regarding his reputation. Even if Waller's prior "same objection" was to the admission of testimony regarding his reputation, he must preserve error by objecting each time the evidence in question is offered or obtain a running objection. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991); *Martin v. State*, 151 S.W.3d 236, 240 (Tex. App.—Texarkana 2004, pet. ref'd). Accordingly, Waller failed to preserve this issue for our review.

*(2)    Failure to Instruct the Jury on Extraneous Offenses Was Not Egregiously Harmful*

During the punishment phase of the trial, the State introduced evidence that Waller had been convicted of several prior offenses as well as other pending charges and extraneous offenses. In its punishment charge to the jury, the trial court failed to instruct the jury that any extraneous offenses must be proven beyond a reasonable doubt. Waller contends that the trial

5

court's failure to so instruct the jury resulted in egregious harm. To its credit, the State admits that the trial court erred, but argues that Waller did not suffer egregious harm as a result.

Under Article 37.07 of the Texas Code of Criminal Procedure, the trial court should have instructed the jury that it could not consider any such conduct unless convinced such bad act was proven beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2013); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). A defendant is entitled to have the jury receive a reasonable-doubt instruction regarding extraneous offenses, even in the absence of a request. *Huizar*, 12 S.W.3d at 484. It is error if the trial court fails to apply this jury instruction sua sponte when it is appropriate to do so. *Id*. The trial court erred.

Waller did not request such an instruction and did not otherwise object to the jury charge. Absent such an objection or request, we will not reverse on this point of error unless the record demonstrates resulting egregious harm to him under the standard set out in *Almanza*. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)); *Mathonican v. State*, 194 S.W.3d 59, 62, 66 (Tex. App.—Texarkana 2006, no pet.).[2]

The record must show that Waller suffered actual, rather than merely theoretical, harm from a jury-instruction error. *Ngo*, 175 S.W.3d at 750. "[E]rrors which result in egregious harm

---

[2]In analyzing a jury charge complaint, we first determine whether error exists in the charge and, then, if there was error, whether sufficient harm resulted from the error to compel reversal. *Ngo*, 175 S.W.3d at 743–44. If error occurs because of a failure to properly instruct the jury, the standard of review depends on whether the defendant lodged a proper objection. If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of defendant." *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id*. If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).

are those which affect 'the very basis of the case,' deprive the defendant of a 'valuable right,' or 'vitally affect a defensive theory.'" *Almanza*, 686 S.W.2d at 172. In reviewing for egregious harm, we evaluate (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record as a whole. *Id.* at 171.

We first consider the charge as a whole. Except for the omission of an instruction that extraneous acts must be proved beyond a reasonable doubt, Waller's jury charge on punishment was legally adequate.

We next consider the state of the evidence on punishment. Through the testimony of a fingerprint expert and the admission of eight penitentiary packets, the State proved Waller had a criminal record, including two prior convictions for possession of a controlled substance in Penalty Group 1 in Red River County and Hunt County, two prior convictions for unlawful carrying of a weapon in Hunt County and Red River County, and prior convictions for resisting arrest or transport and for failure to identify in Red River County.

Waller specifically argues that the State sought a severe sentence "based in large part, on an assault allegation that was, if not wholly untrue, then at the very least not proven beyond a reasonable doubt. The State further pointed to several other cases that were pending but not proven." The assault allegation is a pending family-violence charge alleging that Waller assaulted Shaunte Monique Dennis, Waller's girlfriend and mother of his child. On cross-examination, Police Chief Brandon Harbison admitted that Dennis filed an affidavit of nonprosecution and that whether the case is pursued is up to the district attorney. Six

7

photographs depicting marks and bruises on Dennis' head, face, and neck were admitted into evidence. Dennis testified that she is not pursuing the charge, that the matter was a misunderstanding, that Waller is a caring and involved father, and that "[o]verall, he has a good heart and he is a good person."

Harbison also testified to a few other pending, unadjudicated offenses Waller allegedly committed at the time of a traffic stop, including evading arrest on foot, possession of less than one gram of what appeared to be methamphetamine in a school zone, and driving with an invalid driver's license. He explained that these lesser offenses were still pending because, in this case, the State was pursuing the more serious charge of aggravated assault with a deadly weapon and that a decision on whether to pursue the lesser offenses would depend on the outcome of this case.

In its closing argument, the State referenced the family-violence assault charge:

You got to hear a little bit about that from the lady it happened to. She sure didn't want to get up here and testify to y'all. But you got to see the pictures, show you what this guy is all about; but he's a good father, he's a heck of a role model. And I don't think we need another kid growing up in this cycle and repeating what we've got here today with his daddy. He needs to realize there's consequences to your actions.

In spite of that reference, the State did not, as Waller argues, largely base its argument on the charge of family-violence assault. That charge and the pending charges from the traffic stop were relatively small parts of the State's argument that Waller has demonstrated a pattern of criminal behavior and therefore should be in prison for a long time. When they are viewed in light of Waller's proven criminal record and the jury's acceptance of the State's version of events in finding Waller guilty, they weigh against a finding of egregious harm.

8

In light of the foregoing factors, we conclude that the charge error did not deprive Waller of any "valuable right" and did not affect the very basis of the case or vitally affect any defensive theory. Therefore, there was no egregious harm. *See Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999).

*(3)     Ineffective Assistance of Counsel Was Not Shown*

Waller also argues that he received ineffective assistance of counsel because counsel failed to object to (a) a comment on Waller's Fifth Amendment privilege, (b) the State's opening statement striking at Waller over counsel's shoulder, and (c) inadmissible hearsay.

We employ the two-pronged *Strickland* test for determining whether a defendant received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel under the first *Strickland* prong, an appellant must first show counsel's performance was deficient to the extent that it fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687–88. The *Strickland* test "'requires a case-by-case examination of the evidence.'" *Hart v. State*, 314 S.W.3d 37, 41 (Tex. App.—Texarkana 2010, no pet.) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Allegations of ineffectiveness must be firmly supported by the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Hart*, 314 S.W.3d at 41 (citing *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002)).

From this record, which does not contain counsel's reasoning for failing to object, Waller bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

9

Rarely will a reviewing court have a record sufficient to make its determination on direct appeal regarding a claim of ineffective assistance of counsel. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect" the reasoning of trial counsel. *Id*. at 813–14. As demonstrated below, this is such a case.

Waller complains of his trial counsel's failure to object to comments on Waller's post-arrest silence. The due-process rights guaranteed by the United States Constitution prohibit the cross-examination of a defendant concerning his silence after he has been arrested and given *Miranda*[3] warnings. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). The goal of *Doyle* is to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after his or her arrest. *Gravley v. Mills*, 87 F.3d 779, 788 (6th Cir. 1996). The same considerations bar the prosecution from using evidence of such silence as part of its case-in-chief against the defendant. *Stroman v. State*, 69 S.W.3d 325, 331 (Tex. App.—Texarkana 2002, pet. ref'd). And under Texas law, the prosecution's commenting on post-arrest silence, whether before or after the giving of *Miranda* warnings, is a violation of an accused's right to be free from compelled self-incrimination under Article I, Section 10 of the Texas Constitution. TEX. CONST. art. I, § 10; *see Sanchez v. State*, 707 S.W.2d 575, 580 (Tex. Crim. App. 1986).

On direct examination by the State, Chief Harbison testified, without objection, that Waller refused to speak with police and stated he wanted a lawyer. On cross-examination, Harbison admitted that Waller is allowed to do just that. Again without objection, Harbison

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

testified on redirect that, in accidental shooting cases, the shooter normally stays at the scene of the shooting and is cooperative. In its closing argument, the State argued that, "if it's an accident, if it's self-defense, folks don't run . . . [i]nnocent folks don't run." Waller's counsel did not object.

Counsel's failure to object to inadmissible evidence may constitute a plausible trial strategy such as a plan to appear open and honest with the jury. *See Thompson v. State*, 915 S.W.2d 897, 904 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd); *Varughese v. State*, 892 S.W.2d 186, 196 (Tex. App.—Fort Worth 1994, pet. ref'd).

Waller argues that his trial counsel was ineffective for failing to object to the prosecution's allegedly attacking Waller by attacking his counsel. In its opening statement, the State commented, "That's what it's going to come down to. I don't' know what the defense -- they can cook up whatever story they want to, but I've got 4 people, 5 people out there saying that's what happened."

Waller argues that the prosecution's statements attacked counsel's integrity and that his trial counsel was ineffective for failing to object. It is well recognized that prosecutors' arguments that attack the personal morals or trustworthiness of defense counsel are manifestly improper because they undermine the adversarial system by unfairly prejudicing the jury against the defendant's attorney. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). However, Waller's counsel could have reasonably interpreted the State's opening remarks to be nothing more than an attack on the credibility of Waller's anticipated defense and the testimony of his witnesses.

11

Waller also claims his trial counsel was ineffective for failing to object to inadmissible hearsay. During the State's questioning of Chief Harbison, it asked whether anyone had told him, orally or in writing, that Runnels had a gun. Harbison answered, "No." Waller contends that the sole intent of Harbison's testimony was to convey to the jury that the witnesses' statements were consistent in denying that Runnels had a gun and that the testimony was therefore hearsay.

Harbison's testimony was cumulative because, at that point in the trial, Jackson, Ricks, Early, and Thomas had all testified that they had not seen Runnels with a gun. Therefore, Waller's counsel could have decided that objecting to Harbison's testimony would needlessly draw attention to the undisputed fact that no one saw Runnels with a gun that night.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged actions could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). Because there are plausible reasons and strategies for not objecting to the items argued, we will not second-guess the strategy of Waller's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Here, Waller has not shown that his trial counsel's performance was deficient. Because failure to satisfy either prong of the *Strickland* test is fatal, we need not examine the second prong. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). We overrule this issue.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    February 19, 2014
Date Decided:      April 25, 2014

Do Not Publish